IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: ) | |
| ) | |
| ROGER C. SCHAEFER and EVA K. ) | |
| SCHAEFER, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| FIRST STATE BANK OF RED BUD, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | CIVIL NO. 10-198-GPM |
| ) | |
| OFFICIAL COMMITTEE OF ) | |
| UNSECURED CREDITORS, ) | |
| ) | |
| Appellee. ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This bankruptcy appeal came before the Court for oral argument on August 9, 2010. Having fully considered all the papers on file and the arguments presented, the Court rules as follows.

FACTUAL BACKGROUND

On February 15, 2008, Roger C. Schaefer and Eva K. Schaefer (the Debtors) filed a petition for relief under Chapter 11 of Title 11 of the United States Code. The Debtors were in the farming and pork production business and conducted business under the names "Roger and Eva Schaefer" and "Schaefer Stock Farm." The Debtors also were shareholders in a pork production corporation named "Premium Pork, Inc." First State Bank of Red Bud (the Bank) made loans to the Debtors and to Premium Pork, Inc., which the Debtors personally guaranteed.

The Debtors owned certain real property and improvements commonly known as 9442 Taake Road, Columbia, Illinois, 62236-3926 (the Property). On August 27, 2007, the Debtors executed and delivered to the Bank a real estate mortgage (the Mortgage) against the Property to secure a principal amount of indebtedness not to exceed $4 million. The Mortgage defines "Borrower" as Premium Pork, Inc., including all co-signers and co-makers of the Note and all their successors and assigns; "Grantor" as Roger C. Schaefer and Eva K. Schaefer; and "Lender" as First State Bank of Red Bud, its successors and assigns. By its terms, the Mortgage provides for cross-collateralization and future advances.

> **CROSS-COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.
>
> Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.
>
> **FUTURE ADVANCES.** In addition to the Note, this Mortgage secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower, together with all interest thereon; however, in no event shall such future advances (excluding interest) exceed in the aggregate $4,000,000.00.
>
> **THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B)**

**PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STATUTORY LIENS, EXCEPTING SOLELY TAXES AND ASSESSMENTS LEVIED ON THE REAL PROPERTY, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. ….**

The Mortgage further provides that if "Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor," then such may constitute, at Lender's option, an Event of Default under the Mortgage. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option, may, among other things, declare the entire indebtedness immediately due and payable. The word "Indebtedness" is defined as:

> all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by the Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

The word "Note" means, in pertinent part:

> the promissory note dated August 27, 2007, in the original principal amount of $4,000,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is a variable interest rate based upon an index. The index currently is 8.250% per annum. Payments on the Note are to be made in accordance with the following payment schedule: in one payment of all outstanding principal plus all accrued unpaid interest on September 27, 2007. ….

> It is clear from the terms of the Mortgage that the Bank intended for Premium Pork, Inc., to

execute a promissory note in the principal amount of $4 million on August 27, 2007. There is no Note dated August 27, 2007. Rather, three promissory notes were executed on September 21, 2007: (1) the Debtors executed a promissory note in favor of the Bank in the principal amount of $753,824.30; (2) Premium Pork, Inc., executed a promissory note in favor of the Bank in the principal amount of $3,563,080.09; and (3) Premium Pork, Inc., executed another promissory note in favor of the Bank in the principal amount of $315,673.93. Only the Debtors' note is included in the record; there is no dispute regarding Premium Pork, Inc.'s, notes. The Debtors' note provides payment on demand or, alternatively, on September 21, 2008. It seems clear that the Debtors were obligated to the Bank before they executed the Mortgage, but the amount of the debt is unclear. Debtor Roger Schaefer testified during his debtor examination that the Debtors had smaller notes that were consolidated under one, but these exhibits were not filed in the Bankruptcy Court nor in this Court.

In the Bankruptcy Court, the Debtors filed an adversary proceeding against their creditors to determine the validity and priority of liens against and security interest in the Property. There is no dispute among the parties that First National Bank of Waterloo holds the first and second priority mortgage liens against the Property. The Debtors and the Bank contend that the Mortgage creates a third priority lien for the remaining amounts due on the principal sum of $4 million. The Office of the United States Trustee created and appointed members to the Official Committee of Unsecured Creditors (the Committee), and the Bankruptcy Court granted the Committee's motion for derivative standing to pursue certain claims. Thereafter, the Committee filed a cross claim against the Bank, seeking to avoid the Mortgage as a fraudulent transfer pursuant to 11 U.S.C. § 548; specifically, the Committee claimed that the Bank did not provide the Debtors with reasonably equivalent value in

exchange for the Mortgage. The cross claim states: "Upon information and belief, the [Mortgage to the Bank] was done in connection with an out of court work out or forbearance, where the [Bank] agreed not to foreclose on its various security interests in exchange for certain promises by the Debtors and the [Mortgage]" (Cross-Claim at ¶ 9). The Bank admitted this allegation in its original answer to the cross claim and seemingly attempted to clear up some of the uncertainties regarding the Debtors' obligations described above by stating: "The [Bank] also extended the terms of the Debtor's notes and lowered the Debtor's interest charges as further consideration for the granting of the third mortgage to secure prior Debtor debts of $5,074,906.09" (Answer at ¶ 9). The Bank later filed an amended answer, stating: "Bank admits that the [Mortgage] was in connection with the collateralization of antecedent obligations of the Debtors to Bank, and Bank further admits that as part of the consideration for the [Mortgage] it forbore from enforcing the Debtors' obligations to Bank. Bank further admits that it made other concessions to the Debtors in connection with the [Mortgage]. Bank denies each and every allegation in paragraph 9 of the Cross-Claim not specifically admitted." (Amended Answer at ¶ 9). While the amount of the Debtors' antecedent debt is uncertain, it is clear to this Court – and not seriously disputed by the parties – that Debtors had antecedent debt obligations at the time they executed the Mortgage.

The Bankruptcy Court, relying on the case of *In re Solomon*, 299 B.R. 626 (BAP 10th Cir. 2003), found that there was no reasonably equivalent value given for the Mortgage. Consequently, the Bankruptcy Court found that the Mortgage was constructively fraudulent pursuant to § 548(a)(1)(B) and that the lien created by the Mortgage should be avoided. The Bank appeals these findings and argues, primarily, that the Bankruptcy Court erred as a matter of law by engrafting a "new value" requirement into the determination of reasonably equivalent value. Alternatively, the

Bank argues that the Bankruptcy Court failed to consider the Debtors' direct obligations to the Bank and that, by failing to consider and find such obligations to be reasonably equivalent value, the Bankruptcy Court's decision was clearly erroneous.[1]

**ANALYSIS**

The legal standard used by the Bankruptcy Court to define and interpret "reasonably equivalent value" is a question of law subject to *de novo* review. *See generally In re Image Worldwide, Ltd.*, 139 F.3d 574, 576 (7th Cir. 1998); *see also In re Excalibur Automobile Corp.*, 859 F.2d 454, 457 (7th Cir. 1988) (conclusions of law are reviewed *de novo*). Where the correct legal standard is identified and applied, the determination whether reasonably equivalent value was given is a question of fact subject to clear error review. *See In re Image Worldwide*, 139 F.3d at 576.

Under 11 U.S.C. § 548(a)(1)(B), a trustee "may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily … received less than a reasonably equivalent value in exchange for such transfer or obligation," and the debtor "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." Under this section, "value" means "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). There is no dispute in this case regarding the insolvency provision, and there is no question that antecedent debt is value; the parties' sole dispute is whether the Debtors received reasonably equivalent value in exchange for the Mortgage.

---

[1] The Bank also appeals the Bankruptcy Court's denial of the Bank's motion to alter or amend judgment, for relief from judgment, for reconsideration, and for rehearing.

There is no fixed mathematical formula for determining reasonably equivalent value; rather, the determination depends on all the facts of each case. *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). In this case, the Committee bears the burden of proving by a preponderance of the evidence that reasonably equivalent value was lacking. *Id.*; *In re Image Worldwide*, 139 F.3d at 580.

The Bankruptcy Court applied an incorrect standard in determining whether the Committee proved that the Debtors did not receive reasonably equivalent value in exchange for the Mortgage. The Bankruptcy Court focused on the facts "that no money changed hands and that no additional funds were loaned to the Debtors/Plaintiffs personally" and erroneously concluded that the "Debtors' personal liability to the [Bank] did not change as a result of the August 27, 2007, mortgage." The Bankruptcy Court then relied upon an overly broad reading of *In re Solomon*, 299 B.R. 626; found that the Debtors did not personally receive any proceeds from the loans made to Premium Pork, Inc., on September 21, 2007; and improperly shifted the burden of proof to conclude that "there has been nothing shown that any other quantifiable benefit was received by the Debtors/Plaintiffs as a result of the August 27, 2007, mortgage transfer."

It is undisputed that the Debtors were obligated to the Bank at the time they executed the Mortgage and that such antecedent debt is value. The question becomes what is reasonably equivalent value for the Mortgage. The Committee failed to show the value of the Property, so the Court is unable to compare the value of property to the amount of the debt that was secured, either directly or indirectly as a guarantor. *See, e.g., In re Limonciello*, Adversary No. 07 A 909, 2009 WL 1408077 (Bkrtcy. N.D. Ill. May 19, 2009) (the parties enlisted real estate appraisers to assist the court in determining reasonably equivalent value). The Mortgage clearly secured the Debtors' direct

debt evidenced by the September 21, 2007, promissory note in the amount of $753,824.30 under the Mortgage's Future Advances provision, which states: "In addition to the Note, this Mortgage secures all future advances made by [the Bank] to [the Debtors] whether or not the advances are made pursuant to a commitment." Before this note was executed, the Mortgage collateralized the Debtors' antecedent debt under the Mortgage's Cross-Collateralization provision, which covers all obligations, debts, and liabilities of the Debtors to the Bank, whether "now existing or hereafter arising," whether direct or indirect, and whether obligated as a guarantor. The court's holding in *In re Solomon* does not require the result reached by the Bankruptcy Court. The *Solomon* court specifically distinguished its facts, where the debtor's obligations arose solely as a guarantor, from cases in which there is a direct debt obligation.

> Based upon our reading of [*In re Wes Dor, Inc.*, 996 F.2d 237 (10th Cir. 1993),] we conclude that if faced with a § 548(a)(1)(B) antecedent debt case like the present case, the Tenth Circuit would examine what the debtor received in exchange for the securing of an antecedent debt to determine [reasonably equivalent value] and would not follow the *Anand I* per se rule. We further note that, in one significant respect, the facts of this case are distinguishable from *Anand*. The debtor in *Anand* received the loan proceeds from the original antecedent debt. The *Anand II* court noted that the debtor receives the loan proceeds in the typical antecedent debt case:
>
>> The debtor receives value simply by securing a debt. The collateral makes the loan possible; the value received by the debtor is access to the loan proceeds; … This value conferred on the debtor is no less significant when the debtor provides security for an antecedent debt, rather than doing so at the time of the original loan transaction. *When one focuses on the fact that the value the debtor receives is the proceeds of the loan itself – even where the debtor collateralizes an antecedent debt – then [the bankruptcy judge's approach in Anand I] is eminently sensible .…* In circumstances such as these the court usually looks to the *other value, beyond the loan,* that the debtor received in conjunction with the transfer.

*In re Solomon*, 299 B.R. at 636-37; *quoting In re Anand (Anand II)*, 239 B.R. 511, 517-18 (N.D. Ill. 1999) (emphasis included in *Solomon*). Reading *Solomon* and *Anand II* together, the Court finds

that they are not inconsistent. Rather, they provide that there is no per se rule to be applied in this case and this Court must consider any other value that the Debtors received in exchange for the Mortgage.

The Debtors received value in the collateralization of their antecedent debt, which avoided any acceleration; value for securing their direct debt in the amount of $753,824.30; value in the form of the Bank's forbearance of repayment of the debt; and value in the form of the Bank's forbearance of the Debtors' guarantor obligations. While the value of the guarantor obligations alone may not be quantified as reasonably equivalent value, taken with all of the circumstances of this case, the forbearance of those obligations does have value. The Committee has failed to establish, by a preponderance of the evidence, that the transaction lacked reasonably equivalent value.

## CONCLUSION

For the foregoing reasons, the judgment of the Bankruptcy Court is **REVERSED**. This case is **REMANDED** to the Bankruptcy Court with instructions to vacate its Order avoiding the lien created by the Mortgage consistent with this Memorandum and Order. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 03/28/11

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge
